UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
EQUAL EMPLOYMENT OPPORTUNITY      :
COMMISSION,                                                      :        CIVIL ACTION NO.  14-cv-4567
                                                                            :
            Plaintiff,                                      :
                                                                            :        COMPLAINT
         v.                                                       :
                                                                            :        JURY TRIAL DEMANDED
SEAPOD PAWNBROKERS, INC., d/b/a    :
SEAPOD PAWNBROKERS; SEAPOD        :
CAPITAL GROUP, LLC, d/b/a SEAPOD  :
PAWNBROKERS,                                             :
                                                                            :
           Defendants.                                 :
------------------------------------------------------------x

NATURE OF THE ACTION

       This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex, race, national origin, and retaliation, and to provide appropriate relief to Gina Rivera, Marabelle Williamson, Christina Brens, Jessica Dawson, Estefania Vargas, and other similarly aggrieved employees who, from January 1, 2009 to the present, were adversely affected by such practices.  As alleged with greater specificity in paragraphs 12 - 14 below, Defendants Seapod Pawnbrokers, Inc., d/b/a Seapod Pawnbrokers, and Seapod Capital Group, LLC, d/b/a Seapod Pawnbrokers (jointly, "Defendant Employers") subjected female employees to harassment and created a hostile work environment based on sex (female), national origin (Hispanic), and/or race (Black). Defendant Employers also retaliated against Gina Rivera, Marabelle Williamson, Christina Brens, Jessica Dawson, and Estefania Vargas for complaining about the harassment and/or filing an EEOC Charge and participating in the EEOC's investigation.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Eastern District of New York.

## PARTIES

3. Plaintiff Equal Employment Opportunity Commission (the "Commission" or "EEOC") is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Seapod Pawnbrokers, Inc., d/b/a Seapod Pawnbrokers, has continuously been a New York domestic business corporation doing business in the State of New York and in the boroughs of Queens and Brooklyn within the City of New York, and has continuously had at least 15 employees.

5. At all relevant times, Defendant Seapod Pawnbrokers, Inc., d/b/a Seapod Pawnbrokers, has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6. At all relevant times, Defendant Seapod Capital Group, LLC, d/b/a Seapod Pawnbrokers, has continuously been a New York domestic limited liability company doing

business in the State of New York and in the boroughs of Queens and Brooklyn within the City of New York, and has continuously had at least 15 employees.

7. At all relevant times, Defendant Seapod Capital Group, LLC, d/b/a Seapod Pawnbrokers, has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

8. More than thirty days prior to the institution of this lawsuit, Rivera, Williamson, Brens, Dawson, and Vargas filed charges with the Commission alleging violations of Title VII by Defendant Employers.

9. The Commission issued to Defendant Employers a Letter of Determination dated January 27, 2014, notifying Defendant Employers that the Commission found reasonable cause to believe that Defendant Employers had discriminated against Rivera, Williamson, Brens, Dawson, Vargas, and similarly aggrieved individuals on the basis of sex, national origin, and/or race and retaliated against Rivera, Williamson, Brens, Dawson, and Vargas in response to their protected activity, all in violation of Title VII.

10. The conciliation efforts required by law have occurred and were unsuccessful:

    a. On January 27, 2014, the Commission issued to Defendant Employers a Letter of Determination inviting Defendant Employers to join with the EEOC in informal methods of conciliation.

    b. On April 23, 2014, the EEOC issued a Notice of Conciliation Failure advising Defendant Employers that despite its efforts the EEOC was not able to secure an agreement acceptable to the Commission.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

12. Since at least January 1, 2009, Defendant Employers have engaged in unlawful employment practices at their Brooklyn and Queens, New York, facilities, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

    a. Defendant Employers have regularly subjected Rivera, Williamson, Brens, Dawson, Vargas, and other female employees to sexual comments, commands, and conduct. These include, but are not limited to, owner Frank Morea referring to women as "my Seapod bitches," telling women "I'm going to make babies with all of you the Seapod way," asking women for graphic details about how they used toilet paper and tampons, commenting about putting cameras in the women's bathroom, watching pornography on his work computer, cursing at the women in front of customers and coworkers, joking about women being his "whipping slaves," calling women stupid and fat, staring at the women menacingly, and ordering women to: "dance for me," bend over so that he could ogle them from behind, fetch coffee for him, bring him lunch, give him manicures and pedicures, give him massages or rub his belly, cook for him, serve him food, run errands, do laundry, and change the bed sheets in a bedroom attached to one of the pawn shops.

    b. Rivera, Williamson, Brens, Dawson, Vargas, and other female employees were disgusted by and did not welcome Morea's daily sexual comments, commands, and conduct.

    c. Defendant Employers have also regularly subjected Rivera, Williamson, Brens, Dawson, Vargas, and other female employees to additional discriminatory conduct because of the employees' sex (female), which contributed to the hostile work environment. This included excessively criticizing the women's work, changing their schedules, cutting their hours,

failing to pay them overtime, threatening them with termination and physical violence, and terminating them without justification.

    d.  Defendant Employers have regularly subjected Rivera, Williamson, Dawson, and other employees to offensive racial remarks regarding African Americans. These include but are not limited to Morea referring to African Americans as "monkeys" and "black bastards," stating that the store smelled because "the monkeys are coming in," making comments that someone is a certain way "because he/she is Black," telling racist jokes, and stating he was going to come to work with a new uniform—a Ku Klux Klan hood.

    e.  Defendant Employers also knew of and refused to prevent the offensive racial comments of at least one third-party—Morea's father, Ralph Morea—who repeatedly subjected employees to comments that he did not believe in interracial couples and that the world is "fucked up because of the biracial." Williamson is both Black and Hispanic, Rivera and Dawson enjoy close associations with African Americans, and other employees who are multi-ethnic enjoy close personal relationships with African Americans and/or were offended by the regular and hostile racial comments.

    f.  Rivera, Williamson, Dawson, and other employees were disgusted by and did not welcome the daily racial comments.

    g.  Defendant Employers have regularly subjected Rivera, Williamson, Brens, Dawson, Vargas, and other Latina or multi-ethnic female employees, to a hostile work environment because of their sex (female) and national origin (Hispanic). Morea instructed hiring officials to hire only "Spanish girls" that were "cute," and he admitted that he did not like to hire men because he wanted to be "the dominant one" in the workplace. The offensive

comments set forth in paragraph a, above, also contributed to a hostile work environment for Latina employees.

      h.    The racially, sexually, and ethnically hostile environment described above culminated in Morea's terminating Rivera, Williamson, Brens, and Dawson, and constructively discharging Vargas.

13.    Since at least January 1, 2009, Defendant Employers have engaged in unlawful retaliation at their Brooklyn and Queens, New York facilities, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

      a.    On multiple occasions, Rivera, Williamson, Brens, Dawson, and Vargas complained to Morea or male managers about the discriminatorily hostile environment described above, or otherwise opposed the discriminatory actions.

      b.    When the women complained of or opposed the harassment, Morea and/or the male managers frequently over-scrutinized the objecting employee's work, transferred the employee, changed the employee's schedule, demoted the employee's position, cut the employee's pay, increased the harassment, and/or threatened the employee with physical violence and/or termination.

      c.    Within one month of Rivera's, Williamson's, Brens's, Dawson's, and Vargas's complaints, Defendant Employers terminated each of them against her will.

      d.    Defendant Employers rehired Vargas. When Vargas first returned, Morea did not work with her. But Morea began working with her again in April 2012. From then until June 2012—i.e., during the pendency of the EEOC investigation—Morea cut her pay, threatened to terminate her, transferred her, and repeatedly changed her schedule in a knowing attempt to change the terms and conditions of her employment so that she could not continue in the job.

Vargas complained to Defendant Employers that Morea was discriminating against her and retaliating against her for her protected activity.  Defendant Employers ignored her complaint and refused to allow her to keep her schedule, forcing her to resign.  Thus, Defendant Employers constructively discharged Vargas.

e. During the Commission's investigation, Defendant Employers admitted that they terminated the women because of "the subversive behavior of several employees" and "an atmosphere of disloyalty" that began to pervade the workplace following their complaints. Defendant Employers did not investigate or address the complaints, or the retaliatory actions that followed on the heels of the complaints, and the harassment continued unabated.

14. At all relevant times, Frank Morea was Defendant Employers' owner, CEO, and/or General Manager.  Morea exerted complete control over general operations and all employee matters.  Morea held direct supervisory responsibility and control over Rivera, Williamson, Brens, Dawson, Vargas, and similarly aggrieved employees, and had the power to hire, fire, or discipline them.

15. The effect of the practices complained of above has been to deprive Rivera, Williamson, Brens, Dawson, Vargas, and other similarly aggrieved female employees of equal employment opportunities and otherwise adversely affect their status as employees, because of their sex.

16. The effect of the practices complained of above has been to deprive Rivera, Williamson, Dawson, and other similarly aggrieved employees of equal employment opportunities and otherwise adversely affect their status as employees, because of race.

17. The effect of the practices complained of above has been to deprive Rivera, Williamson, Brens, Dawson, Vargas, and other similarly aggrieved Latina and multi-ethnic

employees of equal employment opportunities and otherwise adversely affect their status as employees, because of their sex and national origin.

18. The effect of the practices complained of above has been to deprive Rivera, Williamson, Brens, Dawson, and Vargas of equal employment opportunities and otherwise adversely affect their status as employees, in retaliation for their protected activity.

19. The unlawful employment practices complained of above were and are intentional.

20. The unlawful employment practices complained of above were and are done with malice or with reckless indifference to the federally protected rights of Rivera, Williamson, Brens, Dawson, Vargas, and other similarly aggrieved employees.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employers, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in discrimination on the basis of sex, race, and national origin, and from engaging in retaliation for protected activity.

B. Order Defendant Employers to institute and carry out policies, practices, and programs which provide equal employment opportunities for women, African Americans, and Latinas (including multi-ethnic Latinas), and which eradicate the effects of Defendant Employers' past and present unlawful employment practices.

C. Order Defendant Employers to make whole Rivera, Williamson, Brens, Dawson, Vargas, and other similarly aggrieved employees, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary

to eradicate the effects of Defendant Employers' unlawful employment practices, including but not limited to reinstatement of Rivera, Williamson, Brens, Dawson, Vargas, and other similarly aggrieved employees.

      D.      Order Defendant Employers to make whole Rivera, Williamson, Brens, Dawson, Vargas, and other similarly aggrieved employees, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including relocation expenses, job search expenses, and medical expenses not covered by the Defendant Employers' employee benefit plan, in amounts to be determined at trial.

      E.      Order Defendant Employers to make whole Rivera, Williamson, Brens, Dawson, Vargas, and other similarly aggrieved employees, by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

      F.      Order Defendant Employers to pay Rivera, Williamson, Brens, Dawson, Vargas, and similarly aggrieved employees punitive damages for Defendant Employers' malicious and reckless conduct described above, in amounts to be determined at trial.

      G.      Grant such further relief as the Court deems necessary and proper in the public interest.

      H.      Award the Commission its costs of this action.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its complaint.

P. David Lopez
General Counsel

James L. Lee
General Counsel

Gwendolyn Young Reams
Associate General Counsel

_____
Robert D. Rose
Regional Attorney

_____
Nora E. Curtin
Supervisory Trial Attorney

_____
Thomas Lepak
Senior Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004
Phone: (212) 336-3690
Fax:     (212) 336-3623
E-mail: thomas.lepak@eeoc.gov

10